IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:    4:07cr51/RH/CAS
                                                     4:10cv460/RH/CAS
RAYMOND THOMAS GOINGS, JR.

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 91). The Government has filed a response (doc. 93) and Defendant filed a reply (doc. 94). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied. *See* Rules Governing Section 2255 Cases 8(a) and (b).

# PROCEDURAL BACKGROUND[1]

Defendant was charged with possession with intent to distribute cocaine and more than fifty (50) grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii) and 841(b)(1)(C) (doc. 1). The Government filed a Notice of Prior Conviction identifying a prior felony drug case in which Defendant pleaded guilty and adjudication was withheld (doc. 7).

Defendant's original attorney, William Clark of the Office of the Federal Public Defender, moved for and was granted leave to withdraw after he cited irreconcilable differences with his client (docs. 15, 19). Before withdrawing, counsel filed a motion to suppress evidence seized due to an allegedly illegal arrest (doc. 14), which substitute counsel Charles A. McMurry subsequently supplemented (doc. 26). The motions were denied after a hearing (docs. 31, 33). Mr. McMurry filed a pleading titled "Notice of Possible Conflict and Request for Inquiry" in which he noted that Defendant's strategy for the defense of his case was "in direct conflict with the undersigned's best advice" (doc. 34). The court held a hearing (doc. 47), and four days later Defendant entered a plea of guilty (doc. 44–46).

The Presentence Investigation Report ("PSR") was disclosed to the defense on June 25, 2008 (doc. 49). Defendant was held accountable for two kilograms of powder cocaine and two kilograms of cocaine base which, in accordance with the Drug Equivalency Table in the commentary to § 2D1.1 of the Sentencing Guidelines, equated

---

[1]Detailed facts describing the offense conduct are set forth in the Statement of Facts signed by Defendant contemporaneous with his plea agreement (doc. 44) and will be set forth herein only as necessary for resolution of the instant motion.

to 40,400 kilograms of marijuana (PSR ¶¶ 13–14, 19). His base offense level was 36 (PSR ¶ 19). He received a two level adjustment for obstruction of justice which was offset by a two level downward adjustment for acceptance of responsibility, such that his total offense level was also 36 (PSR ¶¶ 23, 26, 27). Defendant had eight criminal history points and thus a criminal history category of IV (PSR ¶¶ 40–42). The applicable guidelines range was 262–327 months.

Counsel filed two sets of objections to the PSR, including to the drug weight and to calculation of Defendant's criminal history, many of which were incorporated into the final PSR (*see* docs. 48, 50).

Sentencing was conducted in two parts (docs. 79 and 80). Because the issue of drug quantity was disputed, the Government presented the testimony of DEA Special Agent James Harley (doc. 79 at 8–40). Harley's testimony supported the drug quantity set forth in the PSR and was based on information that Defendant had personally provided to law enforcement (*id.* at 13). Harley also noted that Defendant admitted to possessing 125 grams of powder and 81 grams of crack cocaine at the time of his arrest (*id.* at 14). Special Agent John Mark Tyler testified to the same admissions by Defendant (*id.* at 41–43). The Government also presented the testimony of Buddy Rhoden from the Thomas County, Georgia Sheriff's Department (doc. 80 at 57–71). Rhoden testified on cross that the substances recovered from Defendant at the time of his arrest appeared to be "damp and wet" (*id.* at 70–71). Finally, forensic chemist Lori Reeves testified about her analysis of the controlled substances seized at the time of

Defendant's arrest, identifying samples as both cocaine hydrochloride and cocaine base (*id.* at 75–77).

Counsel argued that Defendant's offense level, as calculated in the PSR was improperly based on what Defendant allegedly told investigators rather than the amount of drugs actually recovered from him (doc. 80 at 89).  The Government recalled Agent Harley to present additional testimony on this issue (*id.* at 103–111).  The court credited the agents' testimony that Defendant had told law enforcement that he had purchased two kilograms of crack and two kilograms of powder, but said that the information Defendant provided was more likely an attempt to negotiate his way out of custody rather than credible (*id.* at 112). The court thus determined Defendant should be held accountable for only 82 grams of cocaine base and 106 grams of powder cocaine (*id.*). The substances attributed to Defendant converted to 1,661.4 kilograms of marijuana equivalent and a base offense level of 30 (*see* doc. 62; doc. 80 at 114–115).  Although the revised applicable guidelines range would have been 135–168 months, Defendant was subject to a mandatory minimum 20 year term of imprisonment due to his prior felony drug conviction (doc. 80 at 116–117).  The court thus sentenced Defendant to a term of 240 months imprisonment, followed by ten years of supervised release (docs. 59, 61, 62).

Defendant filed a notice of appeal the day after judgment was entered (doc. 60). The following day he filed a motion for rehearing/re-sentencing in which he contended that the quantity of drugs attributed to him could have been artificially inflated due to moisture, absent which, he would not be subject to a minimum mandatory sentence if

the actual weight was less than 50 grams (doc. 63).  The court denied the motion,

noting first that it had no authority under 18 U.S.C. § 3582 to change the sentence even

if it believed the sentence was wrong (doc. 65).  Second, the court stated that the

sentence was not wrong because under any proper view of the evidence Defendant had

been in possession of more than 50 grams of crack cocaine (*id.* at 1-2).

On appeal, Defendant challenged the district court's denial of his motion to

suppress, asserting that Georgia law enforcement officers had not authority to arrest

him in Florida after they pursued him across the state line (doc. 89 at 4).  The Eleventh

Circuit found that Defendant "effectively concede[d] on appeal that his arrest was

supported by probable cause" and he did not "otherwise challenge the court's denial of

his suppression motion," and therefore it did not reach the question of whether his arrest

violated Florida law (doc. 89 at 7; United States v. Goings, 573 F.3d 1141 (11th Cir.

2009)).  The district court's judgment was affirmed.

The present motion was timely filed on September 9, 2010 (doc. 91 at 6).

Defendant separates his claims into four grounds for relief, although two of the claims

are interrelated to the extent that in actuality there are only three claims.  The

Government opposes the motion in its entirety.

## LEGAL ANALYSIS

### General Legal Standards

Because collateral review is not a substitute for direct appeal, the grounds for

collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner

is entitled to relief under section 2255 if the court imposed a sentence that (1) violated

the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. Nyhuis, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998);  McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."  Lynn, 365 F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055).   Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."  Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."  Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503 (2003); see also United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010).  The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial

cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. Strickland, 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013). Strickland's two part test also applies to guilty pleas. Hill v. Lockhart, 474 U.S. 52, 58 (1985). A defendant will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial. Id. at 59. In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; see also Dingle v. Secretary for Dept. of Corrections, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 585 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must

be evaluated with a high degree of deference and without the distorting effects of

hindsight.  <u>Strickland</u>, 466 U.S. at 689.  To show counsel's performance was

unreasonable, a defendant must establish that "no competent counsel would have taken

the action that his counsel did take."  <u>Gordon v. United States</u>, 518 F.3d 1291, 1301

(11th Cir. 2008) (citations omitted); <u>Chandler</u>, 218 F.3d at 1315.  When examining the

performance of an experienced trial counsel, the presumption that counsel's conduct

was reasonable is even stronger, because "[e]xperience is due some respect."

<u>Chandler</u>, 218 F.3d at 1316 n.18.

      With regard to the prejudice requirement, defendant must establish that, but for

counsel's deficient performance, the outcome of the proceeding would have been

different.  <u>Strickland</u>, 466 U.S. at 694.  For the court to focus merely on "outcome

determination," however, is insufficient; "[t]o set aside a conviction or sentence solely

because the outcome would have been different but for counsel's error may grant the

defendant a windfall to which the law does not entitle him."  <u>Lockhart v. Fretwell</u>, 506

U.S. 364, 369–70 (1993); <u>Allen v. Secretary, Florida Dep't of Corrections</u>, 611 F.3d 740,

754 (11th Cir. 2010).  A defendant therefore must establish "that counsel's errors were

so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

<u>Lockhart</u>, 506 U.S. at 369 (quoting <u>Strickland</u>, 466 U.S. at 687).  Or in the case of

alleged sentencing errors, a defendant must demonstrate that there is a reasonable

probability that, but for counsel's errors, the result of the proceeding would have been

less harsh due to a reduction in the defendant's offense level.  <u>Glover v. United States</u>,

531 U.S. 198, 203–04 (2001).  A significant increase in sentence is not required to

establish prejudice, as "any amount of actual jail time has Sixth Amendment

significance." *Id.* at 203.

Finally, the Eleventh Circuit has recognized that given the principles and

presumptions set forth above, "the cases in which habeas petitioners can properly

prevail . . . are few and far between." Chandler, 218 F.3d at 1313. This is because the

test is not what the best lawyers would have done or even what most good lawyers

would have done, but rather whether some reasonable lawyer could have acted in the

circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v.

Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to

have been unwise in retrospect, the decision will be held to have been ineffective

assistance only if it was 'so patently unreasonable that no competent attorney would

have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d

1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether

counsel was inadequate, but rather whether counsel's performance was so manifestly

ineffective that "defeat was snatched from the hands of probable victory." United States

v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing

"unless the motion and files and records conclusively show that the prisoner is entitled

to no relief," a defendant must support his allegations with at least a proffer of some

credible supporting evidence. *See* Chandler v. McDonough, 471 F.3d 1360, 1363 (11th

Cir. 2006) (citing Drew v. Dept. of Corrections, 297 F.3d 1278, 1293 (11th Cir. 2002)

(referring to "our clear precedent establishing that such allegations are not enough to

warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. Lynn, 365 F.3d at 1239.

### Grounds One and Two: Deficient Advice Regarding Plea and Drug Weight

Defendant's claims, as more fully explained in his reply memorandum, are that (1) his plea was not voluntary, knowing and intelligent because at the time he entered his plea he was unaware of a material fact–the drug weight for which he would be held accountable; (2) counsel's advice with respect to his plea was based on a misunderstanding of law and fact; and (3) the Government violated its duty to ensure that the sentence was based on reliable information (*see* doc. 94). Each of these claims centers around the quantity of drugs for which he was held accountable and whether this quantity should have been calculated on the "wet" versus the "dry" weight of the controlled substances.

The court conducted a thorough plea colloquy in Defendant's case (doc. 78). It began the proceeding by reminding Defendant that he would be placed under oath and

that it was very important for him to answer all the court's questions truthfully (*id.* at 7).

Defendant was also told that he could ask the court to repeat any questions that he did

not understand, and that he could stop as many times as he needed to talk to counsel

(*id.*). The court explained the rights Defendant would be waiving by entering a guilty

plea and the charges against him (*id.* at 9–12). The court noted Defendant's objection

to parts of the Government's statement of facts and asked Defendant to explain what

had happened on the date of his arrest (*id.* at 12). Defendant began by stating "I had 50

grams of crack, and I had – it was like almost four and a half ounces of powder" (*id.*).

After the court asked him if "the amount of crack was at least 50 grams," Defendant

responded "yes, sir" (*id.* at 12–13). The court then explained that the maximum

sentence Defendant faced depended partly on whether he had a prior felony drug

offense and asked whether Defendant had pled guilty to possession of cocaine in

Georgia in 2003 (*id.* at 13). Defendant indicated that he had (*id.*). The court told

Defendant that absent certain exceptions, the shortest sentence he could receive was

twenty years, and that he could be sentenced up to a maximum of life imprisonment (*id.*

at 14–17). After the colloquy Defendant proceeded to enter a plea of guilty to the

offense of possessing with intent to distribute cocaine and at least 50 grams of cocaine

base in violation of 21 U.S.C. § 841(b)(1)(A)(iii) (*id.* at 20).

Defendant's focus on the "wet" weight of the controlled substances is apparently

based on testimony at sentencing that the cocaine base recovered at the time of

Defendant's arrest was "wet" and counsel's argument in his motion for reconsideration

that the actual quantity of drugs was enhanced by the weight of the water (doc. 63; doc.

70 at 70–71).  Application note 1 to § 2D1.1 of the Sentencing Guidelines provides that a mixture or substance does not include the weight of materials that must be separated from a controlled substance before it can be used.  Cited examples include fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory.  With respect to water or moisture content, the note provides that for sentencing purposes, in the case of marijuana that has a moisture content rendering it unusable before drying, the weight of the marijuana without the moisture may be approximated by the court.  Defendant has cited no cases suggesting that "dry" measures are required for calculating drug weights, or more specifically, crack cocaine weights.   Moisture in crack cocaine does not render it unusable, and as such the entire weight is appropriately considered for sentencing purposes. *See* United States v. Flint, 389 F. App'x 917, 921 (11th Cir. 2010); United States v. Grayson, 286 F. App'x 943 (7th Cir. 2008); United States v. Tucker, 20 F.3d 242, 244 (7th Cir. 1994); United States v. Coleman, 166 F.3d 428, 432 (2d Cir. 1999).  Cases discussing the moisture content of drugs rendering them unusable more typically refer to marijuana. *See, e.g.,* United States v. Smith, Case No. 04-60035-CR-CMA, 2005 WL 2090208 (11th Cir. Aug. 31, 2005); United States v. Smith, 51 F.3d 980, 981 (11th Cir. 1995); United States v. Carter, 110 F.3d 759 (11th Cir. 1997); United States v. Lipp, 215 F.3d 1338 (10th Cir. 2000); United States v. Pined-Montoya, 966 F.2d 591 (10th Cir. 1992).

Therefore, to the extent Defendant claims that his guilty plea was not intelligent because he did not know that the appropriate measure of drugs was the "dry weight," there is no such requirement with respect to crack cocaine.  His claim that the plea was

unknowing and involuntary because of counsel's failure to comprehend the facts and relevant law with respect to wet and dry weights fails for the same reason. Finally, his assertion that the court did not base its determination on a reliable weight is foreclosed by the court's order denying the motion for reconsideration (doc. 65).

The court also notes that based on its review of the plea colloquy, Defendant's admissions alone were sufficient to support the sentence imposed. Once he admitted possessing a quantity of cocaine base sufficient to reach the statutory threshold, because of his prior conviction, the minimum mandatory sentence applied, even though in this case that sentence was significantly higher than the advisory guidelines range would have been. Therefore, so long as he was sentenced in accordance with § 841(b)(1)(A), his sentence would have remained unchanged even if the quantity of crack cocaine attributed to him had been lower. Neither Defendant's plea nor counsel's performance was constitutionally infirm, and there is no basis for relief on either ground one or ground two of his motion.

### Ground Three–Scoring of Prior Convictions

Defendant contends that counsel was constitutionally ineffective because counsel failed to object to the scoring of Defendant's prior convictions. Defendant also appears to assert that challenges to some of these prior convictions were pending and that it might have been prudent to delay sentencing.

Although criminal history points were assessed for six prior convictions (PSR ¶¶ 31, 32, 34, 35, 37, 38), only Defendant's conviction for possession of cocaine (PSR ¶ 38) impacted his sentence as it paved the way for the application of the statutory

mandatory minimum in 21 U.S.C. § 841(b)(1)(B).   According to the PSR, in 2003

Defendant was charged with possession of cocaine with intent to distribute, but pleaded

to the lesser included offense of possession of cocaine (PSR ¶ 38).   Defendant pleaded

guilty, was adjudicated guilty, and was sentenced to four years probation and a $1,500

fine.  He violated probation and a warrant was issued.  This warrant was dismissed and

another warrant was later issued. His probation term was ultimately tolled due to the

fact that he absconded from supervision (PSR ¶ 38).

        At sentencing, Defendant acknowledged that he had pleaded guilty to possession

of cocaine in the case in question (doc. 80 at 119).  Although he indicated his intent to

challenge this prior conviction,[2] he did not then and does not now indicate any viable

legal basis for doing so.  Nor does it appear that he has ever challenged the conviction

in state court.  Furthermore, Defendant's conviction for possession of cocaine was

properly considered a prior conviction for enhancement purposes.  *See*, *e.g.*, United

States v. Brown, 513 F. App'x 830, 831 (11th Cir. 2013) (prior convictions for simple

possession of cocaine that were misidentified in the Government's § 851 notice were

properly used to enhance sentence pursuant to § 841(b)(1)(A); United

States v. Gonzalez, 414 F. App'x 189, 204 (11th Cir. 2011) ("relatively minor" prior

conviction for possession of cocaine for which defendant served only two days in prison

was properly used to support sentence enhancement); United States v. Taira, 348 F.

---

        [2]In response to the court asking Defendant whether the conviction was valid,

Defendant stated "I got to challenge that conviction, because that was just simple
possession.  If I knew that it could boost me up to 20 years, I never would have pleaded
out to it" (doc. 80 at 119).

Appx. 464, 465 (11th Cir. 2009) (prior guilty plea to possessing cocaine was properly used to enhance a federal sentence despite the fact that defendant was discharged and exonerated after completing pre-trial diversionary program for first offenders); United States v. Acosta, 287 F.3d 1034, 1036–37 (11th Cir. 2002) (adjudication under New York's youthful offender statute constituted a prior conviction for sentencing enhancement purposes although state law does not consider defendant to have been "convicted" and his record is sealed); United States v. Mejias, 47 F.3d 401, 407 (11th Cir. 1995) (nolo plea where adjudication was withheld in Florida court is a conviction supporting enhancement); United States v. Fernandez, 58 F.3d 593 (11th Cir. 1995) (same).[3] Counsel is not ineffective for failing to preserve or argue a meritless claim. Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008); *see also* Sneed v. Florida Dep't of Corrections, 496 F. App'x 20 (11th Cir. 2012) (failure to preserve meritless Batson claim not ineffective assistance of counsel); Lattimore v. United States, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); Chandler v. Moore, 240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for

---

[3]Defendant's citation to United States v. Shannon, 631 F.3d 1187 (11th Cir. 2011) in his reply is inapposite as Shannon dealt with the career offender enhancement under the Sentencing Guidelines, not statutory enhancements under 21 U.S.C. § 841.

change of venue); <u>Jackson v. Herring</u>, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel

need not pursue constitutional claims which he reasonably believes to be of

questionable merit); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992) (no

ineffective assistance of counsel for failing to preserve or argue meritless issue).  There

was no viable basis to challenge this conviction, and challenges to any other convictions

would have had no impact on Defendant's sentence.  Thus, Defendant has failed to

show that counsel's performance was constitutionally ineffective.

### Ground Four: Ineffective assistance of counsel generally

Defendant's last claim for relief is that counsel failed to raise "all the meritorious

claims on direct appeal or in the initial brief."  None of the grounds for relief he asserts in

this motion have merit, and Defendant has not identified any potentially meritorious

claims that could have been raised.  Thus, he has again failed to show deficient

performance or prejudice.

### Conclusion

For all of the foregoing reasons, the court finds that Defendant has failed to show

that any of the claims raised in his motion to vacate, set aside, or correct sentence

pursuant to 28 U.S.C. § 2255 have merit.  Nor has he shown that an evidentiary hearing

is warranted.  Therefore Defendant's motion should be denied in its entirety.

### Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant," and if a

certificate is issued "the court must state the specific issue or issues that satisfy the

showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The motion to vacate, set aside, or correct sentence (doc. 91) be **DENIED**.

2.  A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 17th day of September, 2013.


s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

527a1b3b95d06c20

## <u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).